# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| JACKIE MARTIN, on Behalf of Himself and on Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civ. Act. No. 6:20-cv-5 ) |
| RUSH, LLC, | ) ) |
| Defendant. | ) ) |

## DEFENDANT RUSH, LLC'S SUR-REPLY TO PLAINTIFF'S REPLY IN SUPPORT OF CONDITIONAL CERTIFICATION

**CHAMBERLAIN HRDLICKA WHITE WILLIAMS & AUGHTRY**

By: */s/ Annette A. Idalski*
Annette A. Idalski
Texas Bar No.: 00793235
Raed "Ray" Abilmouna
Texas Bar No.: 24080676
191 Peachtree Street, N.E.
Thirty-Fourth Floor
Atlanta, Georgia 30303
Telephone: (404) 658-5386
Facsimile: (404) 658-5387
annette.idalski@chamberlainlaw.com
ray.abilmouna@chamberlainlaw.com

**COUNSEL FOR DEFENDANT RUSH, LLC**

### A. PLAINTIFF CONCEDES THAT HE IS NOT SIMILARLY SITUATED TO ANYONE WARRANTING DENIAL OF HIS MOTION FOR CONDITIONAL CERTIFICATION.

Plaintiff's Reply in Support of his Motion for Conditional Certification ("Reply") underscores the reasons conditional certification should be denied in this case – no one is similarly situated to Plaintiff. In footnote 4 of his Reply, Plaintiff concedes that he is "no longer moving to certify this matter with regards to technicians" as he obviously realizes that the technicians performed different job duties and were paid overtime. (Doc. No. 35 at 3 n.4.) And, he admits that the *four* remaining employees, who are inspectors, executed arbitration agreements. (Doc. No. 35.) Thus, *Plaintiff* cannot meet his evidentiary burden to show that he and the proposed class are similarly situated. This he must do to avoid stirring up unwarranted litigation via notice.[1] For all the reasons set forth herein and in Defendant's Response (Doc. No. 33), conditional certification cannot be granted.[2]

### B. PLAINTIFF'S ADMISSION THAT TECHNICIANS SHOULD BE REMOVED FROM THE PUTATIVE CLASS SUPPORTS DENYING CONDITIONAL CERTIFICATION.

As Plaintiff no longer moves to certify this case as to Technicians, this means that Plaintiff is left with a potential class size of no more than *four* Inspectors, all of whom are subject to arbitration and class action waiver provisions. Thus, the proposed class is nonexistent. Even if the Inspectors had not executed arbitration agreements, a potential class size of four is too small to warrant conditional certification.[3]

---

[1] Because he has no evidence to support conditional certification, Plaintiff resorted to improperly disclosing and grossly misconstruing the parties' confidential settlement discussions – an issue addressed separately in Defendant's Motion to Strike. (Doc. No. 37.) While Plaintiff's counsel should be admonished and the Reply stricken, it does not change the fact that Plaintiff failed to meet his evidentiary burden.

[2] While recognizing that it is not relevant to his motion for conditional certification, and rather goes to the merits of the case, Plaintiff erroneously alleges that Defendant manipulated facts regarding inspectors' compensation in light of the holding in *Hewitt v. Helix Energy Sols. Grp., Inc.*, 956 F.3d 341 (5th Cir. 2020) for the proposition that a day rate cannot satisfy the salary basis. This is false. To be sure, the Court in *Helix* acknowledged that a day rate can still have a guarantee to satisfy the salary basis test. *Id.* at 344 n.4.

[3] Although probably a moot point since the four Inspectors executed arbitration agreements with class waivers, Defendant is unaware of any case in this circuit granting conditional certification where the class size was as small as four. Indeed, other district courts have held that a potential class size of four is too small for conditional certification. *See e.g.*, *Rumreich v. Good Shepherd Day Sch. of Charlotte, Inc.*, No. 2:17-cv-

1

### C. THE PROPOSED COLLECTIVE EXPRESSED NO INTEREST IN JOINING THIS LAWSUIT.

Plaintiff cannot meet his burden of showing that there are interested, similarly situated potential class members. (*See* Doc. No. 33 at 13–15 (discussing same)); *see also Mason v. Amarillo Plastic Fabricators*, No. 2:15-CV-00109-J, 2015 U.S. Dist. LEXIS 95624, at *10–11 (N.D. Tex. July 22, 2015) ("Affidavits asserting that other potential plaintiffs wish to opt into the lawsuit are a nearly **universal prerequisite to notice and conditional certification of an FLSA collective action**.") (emphasis added) (citing cases). Here, all four Inspectors executed declarations expressing no interest in joining this lawsuit. (Doc. No. 33 at 14; Doc. Nos. 33-1–33.5.) Thus, conditional certification is not proper in this case.

Realizing that the lack of interest is fatal to his Motion, Plaintiff tries, but fails to discredit the declarations signed by potential class members in support of Defendant's Response by surmising (without any evidence) that the Inspectors were bribed or offered money in exchange for their declarations. These false assertions should be disregarded as they are unsupported. There is nothing improper about potential class members submitting declarations stating that they have no interest in pursuing the litigation.[4]

### D. THE ARBITRATION AGREEMENTS SIGNED BY RUSH INSPECTORS ARE PROPER.

Plaintiff's hyperbole – that the arbitration agreements executed by inspectors are invalid, should be vacated, and that a "corrective notice" should issue – based on his unsupported conspiracy theory that the inspectors were bribed or coerced should be summarily dismissed for the following reasons.

---

292, 2018 U.S. Dist. LEXIS 219649, at *28 (M.D. Fla. July 31, 2018) (denying conditional certification where potential class of teachers from a single school "would be too small to satisfy Congress' intent for permitting conditional certification"); *Kessler v. Lifesafer Serv. Providers, LLC*, No. 6:06-cv-1442, 2007 U.S. Dist. LEXIS 102490, at *7–8 (M.D. Fla. Apr. 26, 2007), *affirmed by* 2007 U.S. Dist. LEXIS 38276 (M.D. Fla. May 25, 2007) (holding potential class size of ten was too small) (citing *Prickett v. DeKalb County*, 349 F.3d 1294, 1297 (11th Cir. 2003)); *Sanders v. Drainfield Doctor, Inc.*, No. 6:06-cv-1216, 2007 U.S. Dist. LEXIS 102491, at *7–8 (M.D. Fla. Apr. 16, 2007), *adopted by* 2007 U.S. Dist. LEXIS 33293 (M.D. Fla. May 7, 2007) (twelve was too small); *White v. KCPAR, Inc.*, No. 6:05-cv-1317, 2006 U.S. Dist. LEXIS 100966, at *8 (M.D. Fla. June 2, 2006), *adopted by* 2006 U.S. Dist. LEXIS 40952 (M.D. Fla. June 20, 2006) (two insufficient).
[4] *See, e.g., Mason*, 2015 U.S. Dist. LEXIS 95624 at *10 (denying conditional certification in part because plaintiff submitted no evidence that other potential opt-ins were interested in joining, and noting that the only affidavits submitted were by employees on behalf of defendants stating that they had no interest in joining the lawsuit); *Kerce v. West Telemarketing Corp.*, 575 F. Supp. 2d 1354, 1366 (S.D. Ga. 2008).

1.      **Plaintiff Has No Standing.**

First, Plaintiff has *no* standing to challenge the validity or enforceability of *other employees'* arbitration agreements.  The arbitration agreements do not hinder *Plaintiff's* rights and have no legal relevance to *his* case.  For example, as the Eleventh Circuit has explained:

> The named plaintiffs fail to come within this exception to the general rule against third-party standing. . . . [T]he named plaintiffs have not explained how the unnamed putative class members would be hindered in their ability to assert their own rights. . . . More fundamentally, the named plaintiffs lack standing to assert any rights the unnamed putative class members might have to preclude [defendant] from moving to compel arbitration because the named plaintiffs have no cognizable stake in the outcome of that question. . . . Whether or not [defendant] is precluded from asserting arbitration rights against other individuals has no legal relevance to the named plaintiffs.[5]

Accordingly, Plaintiff's arguments regarding the enforceability and validity of the arbitration agreements is not properly before the Court and should be disregarded.

2.      **Courts Routinely Permit Communications to Potential Class Members Regarding the Implementation of Arbitration Agreements and Class Waivers After Litigation Commences and Before Circulation of Notice.**

Second, even if the issue of standing were not dispositive, as demonstrated below, there is nothing inherently improper about an employer communicating with its employee about its arbitration policy.[6] Moreover, contrary to Plaintiff's assertions, there is nothing inherently coercive, misleading, or deceptive about an arbitration agreement executed after the start of litigation, particularly in this case.  Plaintiff argues that Rush's communications concerning the arbitration agreements were somehow improper because the agreements were signed after the lawsuit was filed, and he cites to *In re Currency Conversion Fee Antitrust Litig.*,

---

[5] *In re Checking Account Overdraft Litig.*, 780 F.3d 1031, 1039 (11th Cir. 2015); *see also Tan v. GrubHub, Inc.*, No. 15-cv-05128, 2016 U.S. Dist. LEXIS 186342 (N.D. Cal. July 19, 2016) (holding plaintiff had no standing) (citing cases); *Conde v. Open Door Mktg., LLC*, 223 F. Supp. 3d 949, 960 (N.D. Cal. 2017) (Because Plaintiffs "are not personally affected" by any arbitration agreements, they "have no interest in the[ir] enforceability" and "lack the ability to challenge the agreements" on behalf of others.); *Bowen v. First Family Fin. Servs., Inc.*, 233 F.3d 1331, 1340 (11th Cir. 2000); *Lee v. Am. Exp. Travel Related Servs., Inc.*, 348 F. App'x 205, 206–07 (9th Cir. 2009); *Conners v. Gusano's Chicago Style Pizzeria*, 779 F.3d 835 (8th Cir. 2015).

[6] *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981); *see also Brown v. Mustang Sally's Spirits & Grill*, No. 12-CV-529S, 2012 U.S. Dist. LEXIS 144722, at *6–7 (W.D.N.Y. Oct. 5, 2012) (citing cases); *Morgan v. El Dorado Home Care Servs.*, No. 1:16-cv-1007, 2016 U.S. Dist. LEXIS 201899 at *7 (W.D. Ark. Nov. 16, 2016) (citing cases).

361 F. Supp. 2d 237 (S.D.N.Y. 2005) and *Balasanyan v. Nordstrom, Inc.*, No. 11-cv-2609, 2012 WL 760566 (N.D. Cal. Mar. 8, 2012). The facts, here, however, are entirely different. Unlike those cases, the other inspectors (1) were already aware of this lawsuit from Plaintiff's communications with at least one of them as early as January 2020; and (2) Rush did not try to change the terms of a previously existing arbitration clause as in *Nordstrom*. Indeed, Timothy Wilson, who is currently employed by Rush, was contacted by Plaintiff, who encouraged him to join this action—a fact not disputed—but he did not want to join.[7] In a display of utter hypocrisy, Plaintiff argues that Rush's communications were improper, thus warranting corrective action, yet he communicated with potential class members, encouraging them to join the lawsuit, with none of the requisite protections or assurances of accuracy he now claims so vital. Plaintiff can cite to no evidence to support is histrionics that Rush's communications with its inspectors were inappropriate.

Moreover, the case law is clear that arbitration agreements may be executed after litigation commences. For example, in *Green v. Plantation of La., LLC*, the court compelled arbitration for six opt-in plaintiffs in a FLSA collective action even though the agreements were signed after the lawsuit began but before the date they opted in.[8] The court recognized that because the plaintiffs signed the agreements before they opted in and "prior to a decision on the conditional certification question", they could "properly be approached by their employer without usurping this Court's authority." *Id.* at *13–15. Moreover, the court found that the parties' communications regarding execution of the agreements were not themselves inherently abusive or coercive. *Id.* at 15. Relying on Supreme Court precedent, the court held that the "'mere possibility of abuse[]' does not justify any remedial action by this court." *Id.* (quoting *Gulf Oil*, 452 U.S. at 104). Similarly, in *Stevenson v. Great Am. Dream, Inc.*, the court enforced an arbitration

---

[7] As a related point, this fact proves that Plaintiff's claim that he is "left in the dark" is a red herring. The fact that Plaintiff previously communicated with at least one potential class member illustrates that he was fully aware of the fact that inspectors were not interested in joining his baseless lawsuit against Rush. (Doc. No. 33 at 14 (addressing same); Doc. No. 33-2, Wilson Decl. ¶ 6.)

[8] No. 10-0364, 2012 U.S. Dist. LEXIS 146488, at *6–7 (W.D. La. Sept. 17, 2012), *adopted by* 2012 U.S. Dist. LEXIS 146168 (W.D. La. Oct. 10, 2012).

agreement that an opt-in plaintiff signed five months after the FLSA action was filed.[9] The plaintiff did not opt in until after signing the agreement, and thus at the time was required to sign the agreement. *Id.* The Court held that "an arbitration agreement is not unconscionable simply because it requires a party to forfeit her right to take part in a collective action. It is thus unclear why, for the unconscionability analysis, it makes any difference when the collective action was initiated." *Id.* at *4–5.

These cases, and others,[10] are plainly at odds with Plaintiff's theory that an employer's adoption and dissemination of an arbitration policy which affects the forum in which class members may assert their claims, is *per se* retaliatory or otherwise constitutes an improper class communication. In support of his contention, Plaintiff relies on cases that not only do not stand for such a broad legal proposition, but are also factually distinguishable. Specifically, many of the cases cited by Plaintiff involved arbitration agreements provided *only to putative class* members, and additionally involved substantial evidence of coercion.[11] None of the facts presented by these cases are present in the case at bar, and therefore, even if he had proper standing Plaintiff's arguments regarding the arbitration agreements should be dismissed.

Respectfully submitted this 27th day of July, 2020.

---

[9] No. 1:12-CV-3359, 2014 U.S. Dist. LEXIS 5874 (N.D. Ga. Jan. 16, 2014), *appeal dismissed,* 2014 U.S. Dist. LEXIS 188589 (N.D. Ga. June 24, 2014), *reconsideration denied*, 2014 U.S. Dist. LEXIS 95812, *2–3 (N.D. Ga. July 15, 2014).

[10] *See also Conners*, 779 F.3d 835; *Jones v. Nat'l Council of YMCA of Am.*, No. 09C6437, 2011 U.S. Dist. LEXIS 36087, at *15–17 (N.D. Ill. Mar. 31, 2011); *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359 (11th Cir. 2005).

[11] *See Billingsley v. Citi Trends, Inc.*, 560 Fed. App'x. 914, 918–19 (11th Cir. 2014) (agreements distributed *only to putative collective members* in back rooms in "highly coercive" and "interrogation-like" manner, with no disclosure of the underlying action, and no evidence that the collective members were aware of the action); *Abdul-Rasheed v. KableLink Commc'ns, LLC*, No. 8:13-cv-879T24, 2013 U.S. Dist. LEXIS 167159, at *2–4 (M.D. Fla. Nov. 25, 2013) (allegations that defendant was threatening and intimidating *only* potential opt-in plaintiffs to waive their right to join collective action *after* the motion for conditional certification was filed, and the court took issue with the terms of the agreement which required each party pay their attorney's fees despite the fact that the FLSA provides award of attorney's fees to prevailing plaintiff); *see also Belt v. Emcare Inc.* 299 F. Supp. 2d 664, 666–69 (E.D. Tex. 2003) (defendant unilaterally mailed letter to absent class members just before court-approved notice was sent, and "attempt[ed] to frighten class members from joining the action and suggested that the action could affect their employment).

**CHAMBERLAIN HRDLICKA WHITE WILLIAMS & AUGHTRY**

By: _/s/ Annette A. Idalski_
    Annette A. Idalski
    Texas Bar No.: 00793235
    Raed "Ray" Abilmouna
    Texas Bar No.:  24080676
    191 Peachtree Street, N.E.
    Thirty-Fourth Floor
    Atlanta, Georgia 30303
    Telephone: (404) 658-5386
    Facsimile: (404) 658-5387
    annette.idalski@chamberlainlaw.com
    ray.abilmouna@chamberlainlaw.com

**COUNSEL FOR DEFENDANT RUSH, LLC**

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 27, 2020, I electronically filed the foregoing Defendant Rush, LLC's Sur-Reply to Plaintiff's Reply in Support of Conditional Certification through the Court's CM/ECF system which will send a notice of electronic filing to counsel of record, as follows:

**SOSA-MORRIS NEUMAN, PLLC**
Beatriz-Sosa Morris
bsosamorris@smnlawfirm.com
John Neuman
jneuman@smnlawfirm.com
5612 Chaucer Drive
Houston, Texas 77005

By: */s/ Raed Abilmouna*
Raed "Ray" Abilmouna