## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| **JACKIE MARTIN,** | § | |
| | § | |
| **Plaintiff,** | § | **CIVIL ACTION NO.  6:20-CV-00005-JDL** |
| | § | |
| | § | |
| **v.** | § | |
| | § | |
| **RUSH, LLC,** | § | |
| | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the parties' cross motions for summary judgment. (Doc. Nos. 72, 73.) Plaintiff Jackie Martin ("Mr. Martin" or "Plaintiff") has filed a motion for summary judgment on liability and liquidated damages (Doc. No. 72), to which Defendant Rush, LLC ("Rush" or "Defendant") has filed a response (Doc. No. 77), and Plaintiff has filed a reply (Doc. No. 80). Defendant has also filed a motion for summary judgment seeking judgment on its affirmative defense and no liquidated damages (Doc. No. 73), to which Plaintiff has filed a response (Doc. No. 76), and Defendant has filed a reply (Doc. No. 79). For the reasons stated herein, Plaintiff's motion (Doc. No. 72) is **GRANTED** as to liability on his Fair Labor Standards Act ("FLSA") claim.  Defendant's motion (Doc. No. 73) is **DENIED**.

## BACKGROUND

On January 3, 2020, Plaintiff Jackie Martin filed this action on behalf of himself and others similarly situated to recover unpaid overtime wages from Rush pursuant to the FLSA, 29 U.S.C. § 201, *et seq*. (Doc. No. 1.) To date, no additional plaintiffs have opted into this action. As alleged,

1

Plaintiff contends he was paid hourly at a straight rate and was not paid overtime by Rush for the hours he worked in excess of 40 hours per week in violation of the FLSA. *Id.* at ¶¶ 24–28.

On April 16, 2018, Rush CEO, John Rush, sent Plaintiff an offer letter for employment at Rush Resources. (Doc. No. 72-7.) "Rush Resources is an industrial services organization offering construction project management, commissioning and startup, and consulting and provides solutions to clients in a variety of industries including Oil & Gas, Power Generation (Nuclear & Fossil), Refinery/Chemical and other industries." (Doc. No. 72-4, at ¶ 4.) The offer letter stated that Plaintiff's title would be that of "Chief Inspector" and his start date would be April 23, 2018. *Id.* In terms of compensation, the offer letter stated that as an exempt hourly employee, Plaintiff would be paid weekly at a straight-time rate of $75.00. *Id.* Plaintiff signed the offer letter and accepted employment that same day. *Id.*

As discussed further herein, while the parties dispute certain aspects of the duties and performance of Plaintiff's job as Chief Inspector, they agree that he was hired to work on a project for Rush's customer, Williams, in North Carolina. (Doc. No. 72-4); (Doc. No. 72-6, Deposition of John Rush ("Rush Tr.") at 116:3–20; 147:5–17); (Doc. No. 72-11, Deposition of Jackie Martin ("Martin Tr.") at 156:16–24). Plaintiff's role as Chief Inspector involved inspection of work being performed by third party contractors on William's jobsite to ensure compliance in the installation of a new Fiber Optics network as upgrades to the electrical system were being made. Martin Tr. at 175:5–15; 242:21–243:10; Doc. No. 72-4. Rush had contracted with Williams for this construction oversight project, and in turn, Rush hired Plaintiff as Chief Inspector for the project. (Doc. Nos. 72-9, 72-7.) The project duration was intended to be 18 weeks (Doc. No. 72-9, at 3), and Plaintiff worked the project from approximately April 21, 2018 to July 15, 2018. (Doc. No. 72-1; Doc. No. 72-4, at ¶ 7.) Plaintiff was paid weekly and compensated based upon the number of hours he

worked in that week. *Id.*; (Doc. No. 76-3.) According to the payroll detail report, Plaintiff was paid $75.00 per hour for the total number of hours worked. *Id.* This pay rate is consistent with the straight-time rate listed in his offer letter. (Doc. No. 72-7.) Indisputably, the pay rate did not change if Plaintiff worked more than 40 hours per week, which he appears to have done all but his first week. (Doc. No. 72-1.) For this reason, Plaintiff contends that Rush failed to pay him overtime in violation of the FLSA. (Doc. No. 72.) Rush contends that Plaintiff is exempt from overtime pay. (Doc. No. 73.) This dispute is the basis of the parties' cross motions for summary judgment.

## LEGAL STANDARD

A motion for summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  The Supreme Court has interpreted the plain language of Rule 56 as mandating "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting *Celotex*, 477 U.S. at 323–25). A fact is material if it might affect the outcome of the suit under the governing law. *Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999). Issues of material fact are "genuine" only if they require resolution by a trier of fact and if the evidence is such that

a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Merritt-Campbell, Inc.*, 164 F.3d at 961. If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little*, 37 F.3d at 1075.

If the movant meets this burden, Rule 56 requires the opposing party to go beyond the pleadings and to show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *EEOC v. Texas Instruments, Inc.*, 100 F.3d 1173, 1180 (5th Cir. 1996); *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1046–47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by argument, conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a mere scintilla of evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 585 (1986); *Wallace*, 80 F.3d at 1047; *Little*, 37 F.3d at 1075.

When ruling on a motion for summary judgment, the Court is required to view all justifiable inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *Merritt-Campbell, Inc.*, 164 F.3d at 961. However, the Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as modified*, 70 F.3d  26 (5th Cir. 1995). Unless there is sufficient evidence for a reasonable jury to return a verdict in  the opposing party's favor, there is no genuine issue for trial, and summary judgment must be granted.  *Celotex*, 477 U.S. at 322–23; *Anderson*, 477 U.S. at 249–51; *Texas Instruments*, 100 F.3d at 1179.

**DISCUSSION**

Plaintiff moves for summary judgment on liability as to his FLSA claim and as to liquidated damages. (Doc. No. 72.) Plaintiff also moves to dismiss Defendant's affirmative defenses on the pleadings. *Id.* Defendant moves for summary judgment that Plaintiff is exempt from the FLSA's overtime requirements and that Plaintiff is not entitled to liquidated damages. (Doc. No. 73.)

## I.    Pleading of Affirmative Defenses

The primary issue joined by the parties' briefing is whether Plaintiff is exempt from the FLSA overtime requirements, which is an affirmative defense raised by Defendant. In Plaintiff's motion, Plaintiff contends that Defendant waived these affirmative defenses and that a judgment on the pleadings is appropriate. (Doc. No. 72, at 10–13.) Accordingly, the court will address the pleading issue first.

Plaintiff contends that Rush pleaded no facts to support any of its exemption defenses. (Doc. No. 72, at 11.) Plaintiff contends, for example, that the pleadings make no mention of pay or job duties with respect to the exemption defenses and argues that Rush has continually changed its story as to how Plaintiff was paid. *Id.* Defendant contends that its affirmative defenses were adequately pled, that Plaintiff has always known those defenses and has sought additional discovery on them, and that Plaintiff has not been prejudiced by the pleadings. (Doc. No. 77, at 16–18.) Defendant also contends that it has always maintained its position that Plaintiff was guaranteed a minimum weekly salary regardless of hours worked. *Id.* at 17.

An affirmative defense must be pled with "enough specificity or factual particularity to give the plaintiff 'fair notice' of the defense that is being advanced." *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999). "The 'fair notice' pleading requirement is met if the defendant 'sufficiently articulated the defense so that the plaintiff was not a victim of unfair surprise.'" *Id.* (quoting *Home Ins. Co. v. Matthews*, 998 F.2d 305, 309 (5th Cir. 1993)). In some cases, "merely

pleading the name of the affirmative defense . . . may be sufficient." *Id.* "A defendant should not be permitted to 'lie behind a log' and ambush a plaintiff with an unexpected defense." *Ingraham v. United States*, 808 F.2d 1075, 1079 (5th Cir. 1987). Nevertheless, a technical failure to comply precisely with the pleading requirements for affirmative defenses is not fatal. *LSREF2 Baron, L.L.C. v. Tauch*, 751 F.3d 394, 398 (5th Cir. 2014) (citing *Levy Gardens Partners 2007, L.P. v. Commonwealth Land Title Ins. Co.*, 706 F.3d 622, 633 (5th Cir. 2013)).

Here, Plaintiff specifically points to Defendant's affirmative defense number twenty-eight as deficient, which simply states: "At all relevant times, Plaintiff was exempt from overtime under the Administrative, Executive, Highly Compensated, and/or Combination exemption to the FLSA." (Doc. No. 72, at 11.) The court does not disagree that these allegations are legal in nature, however, under the Fifth Circuit's "fair notice" pleading requirement, it cannot be said that Plaintiff was subject to any unfair surprise by the nature of these allegations. Indeed, there has been extensive discovery undertaken regarding Plaintiff's pay in this case. Plaintiff had a full opportunity to serve targeted interrogatories and discovery requests, as well as depose Defendant's corporate representative. Plaintiff has never previously moved to dismiss Defendant's affirmative defenses, asked for judgment on the pleadings, or requested a more definite statement. Rather, Plaintiff waited until the parties' dispositive motion deadline to request a judgment on the pleadings on the basis of waiver. The court simply cannot find that, at this stage, given the discovery and time Plaintiff has had to investigate these defenses that Defendant has waived those defenses or that they have resulted in unfair prejudice to Plaintiff.

In this way, Plaintiff's cited case law in support is distinguishable. In *Vargas*, the plaintiff moved pursuant to Rule 12(b)(6) shortly after the affirmative defenses were raised. *Vargas v. HWC Gen. Maint., LLC*, No. CIV.A. H-11-875, 2012 WL 948892, at *3 (S.D. Tex. Mar. 20, 2012). As

such, those defenses were only dismissed without prejudice to re-pleading. *Id.* Moreover, in *Vargas* the defendant failed to even list the specific exemptions it contended did not apply. *Id.* Here, Defendant's affirmative defense number twenty-eight states the specific exemptions it contends are relevant (Doc. No. 4, at 17), and importantly, as discussed, Plaintiff has had ample opportunity to seek out discovery on these exemption defenses at this point. A dismissal at this late juncture would not allow Defendant any opportunity to replead. The court finds the more prudent course at this point is to consider the factual bases for these defenses based upon the evidence submitted in conjunction with the parties' summary judgment motions. As such, Plaintiff's request for judgment on the pleadings is **DENIED**.

## II.    Plaintiff's FLSA Claim

Plaintiff contends that Defendant failed to pay him at a rate of one and one-half times his regular rate of pay for all hours worked over 40 in a work week. (Doc. No. 72.) Defendant contends that Plaintiff is exempt from the FLSA's overtime requirements. (Doc. No. 77.)

Section 207 of FLSA requires an employer to pay overtime compensation to employees working more than forty hours a week, subject to certain statutory exemptions. 29 U.S.C. § 207(a)(1); 29 U.S.C. § 213(a)–(b). To prevail on his FLSA claim, Plaintiff must prove: (1) an employment relationship with the defendant; (2) coverage under the FLSA; and (3) a violation of the FLSA. *Id.; see also Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014) ("An employee bringing an action for unpaid overtime compensation must first demonstrate by a preponderance of the evidence: (1) that there existed an employer-employee relationship during the unpaid overtime periods claimed; (2) that the employee engaged in activities within the coverage of the FLSA; (3) that the employer violated the FLSA's overtime wage requirements; and (4) the amount of overtime compensation due.").

Here, the parties do not dispute the elements of Plaintiff's prima facie case. Plaintiff was an employee of Defendant during the relevant time (Doc. Nos. 72-1, 72-7, 72-4, at ¶ 7), Plaintiff was engaged in commerce (Doc. No. 72-4), and Plaintiff was not paid overtime (Doc. No. 72-1). Indeed, Defendant's response to Plaintiff's motion for summary judgement does not contest these elements. (Doc. No. 77.) The parties' dispute, rather, turns on whether Defendant's failure to pay Plaintiff overtime was in violation of the law. This question depends on whether Plaintiff was exempt from overtime pay under the FLSA.

## III.    Exemptions

Defendant contends that Plaintiff was exempt from the FLSA's overtime requirements because: (1) he was a highly compensated employee; (2) the administrative exemption applies; (3) the executive exemption applies; and/or (4) of the combined nature of his exempt duties. (Doc. No. 73, at 24–38.) Plaintiff contends that the exemptions do not apply because Defendant did not pay Plaintiff a salary and that even if Defendant paid Plaintiff a salary, it bears no reasonable relationship to the actual compensation Plaintiff received. (Doc. No. 76, at 8–22.)

### a.  The Department of Labor's Findings

Plaintiff initially sought relief through the Department of Labor ("DOL") by engaging in the administrative process to resolve his overtime pay issue. Defendant contends that the DOL investigated Plaintiff's claims asserted in this case and found no violations of the FLSA and that Plaintiff was properly classified as exempt. (Doc. No. 73, at 21.) Defendant therefore asks that this court give deference to the DOL's investigation. *Id.* Plaintiff contends that the DOL made no such finding that Plaintiff was exempt and that the investigation was dropped because Plaintiff filed this lawsuit. (Doc. No. 76, at 6.)

Reviewing the DOL materials submitted, it appears that the investigator explained there were no "Section 6, 7, 11, or 12 violations." (Doc. No. 74-3, at 9.) However, contrary to Defendant's contention, nothing in the materials or recordings indicate that the investigator concluded that Plaintiff was exempt. Rather, with respect to exemptions, the investigator explained to Defendant the new rate for highly compensated individuals, and generally explained the exemptions for executives and administrators. (Doc. No. 74-4, at 13–14.) For example, the investigator stated that executive "means somebody needs to, the management and supervision's got to be their primary duty." (Doc. No. 74-4, at 13:12–14.)  Similarly, with respect to the administrative exemption, the investigator stated "[a]dministrative is somebody who basically, that, that is not a field-type position, meaning that's, that's more office." *Id.* at 13:18 –20. But the investigator never concluded whether Plaintiff fit these criteria for exemptions or made any determination as to whether Plaintiff was exempt. As a result of the filing of the instant action, the case before the DOL was ultimately administratively closed. (Doc. No. 74-4, at 14:18–25, 15:1–11.)

As discussed above, the dispute between the parties as it is presented in their cross motions for summary judgment is whether Plaintiff is exempt from overtime pay under the FLSA. The DOL investigation simply elucidates the parties' ongoing disputes with respect to exemption—whether Plaintiff was paid a salary and whether he primarily did field work or office work. (Doc. Nos. 74-3, 74-4.) Both Defendant and Plaintiff are simply drawing inferences from the investigation with respect to Plaintiff's exempt status that do not clearly exist in the record. As discussed, the DOL investigator made no findings with respect to Plaintiff's exemption. Moreover, even if the DOL investigator had made a finding relevant to this court's consideration of the alleged FLSA violation, Defendant concedes that any determination by the DOL would not be given

controlling weight. Defendant merely suggests that the DOL's determination should be a factor "entitled to respect" in analyzing whether Plaintiff is entitled to overtime. (Doc. No. 73, at 21–22.) As such, any deference to the DOL's investigation is simply not relevant to the court's consideration of these motions.

### b.  Highly Compensated Employees

Defendant's primary argument is that Plaintiff is not subject to overtime pay under the FLSA because he is exempt under the regulations as a highly compensated employee. (Doc. No. 73, at 24–34.) Plaintiff contends the exemption does not apply to him because he was not paid a salary. (Doc. No. 76, at 8–13.)

The regulations provide that "an employee with total annual compensation of at least $107,432 is deemed exempt under section 13(a)(1) of the Act if the employee customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee." 29 C.F.R. § 541.601. "To qualify as an exempt executive, administrative or professional employee under section 13(a)(1) of the Act, an employee must be compensated on a salary basis at a rate of not less than $684 per week." 29 C.F.R. § 541.600. The employer has the burden of proving an overtime-pay exemption. *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 402 (5th Cir. 2002).

Here, the parties dispute whether Plaintiff was paid a salary and whether he performed exempt duties. That Plaintiff be paid on a salary basis is a threshold determination for deciding the question of exemption. *See Hewitt v. Helix Energy Sols. Grp., Inc.*, 983 F.3d 789, 790 (5th Cir. 2020) (finding that whether a worker is paid "on a salary basis" is a "a legal question common to all executive, administrative, and professional employees—and to the modestly and highly compensated alike."). As a "[g]eneral rule" the regulations provide that: "An employee will be

considered to be paid on a 'salary basis' within the meaning of this part if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation." 29 C.F.R. § 541.602(a). The general rule further provides that "an exempt employee must receive the full salary for any week in which the employee performs any work *without regard to the number of days or hours worked*." *Id.* § 541.602(a)(1) (emphasis added).

The relevant evidence shows that Plaintiff was paid weekly at an hourly rate of $75.00 per hour. (Doc. No. 72-1.) This is the pay that is reflected in Plaintiff's pay stubs and also what was represented to him in his offer letter. *Id.*; Doc. No. 72-7. Specifically, the payroll report shows that Plaintiff was paid weekly starting the week of April 16, 2018 to April 22, 2018 and ending the week of July 2, 2018 to July 8, 2018. (Doc. No. 72-1, at 17.) Confirming Plaintiff's pay rate of $75.00 per hour, the payroll report details the following pay:

| Weekly Period | Hours Worked | Gross Pay |
|---|---|---|
| Week 4/16/18-4/22/18 | 30 | $2,250.00 |
| Week 4/23/18-4/29/18 | 60 | $4,500.00 |
| Week 4/30/18-5/6/18 | 67.5 | $5.062.50 |
| Week 5/7/18-5/13/18 | 73 | $5,475.00 |
| Week 5/14/18-5/20/18 | 77 | $5,775.00 |
| Week 5/21/18-5/27/18 | 80 | $6,000.00 |
| Week 5/28/18-6/3/18 | 63.5 | $4,762.50 |
| Week 6/4/18-6/10/18 | 55 | $4,125.00 |
| Week 6/11/18-6/17/18 | 82 | $6,150.00 |
| Week 6/18/18-6/24/18 | 80 | $6,000.00 |

| Week 6/25/18-7/1/18 | 81 | $6,075.00 |
| Week 7/2/18-7/8/18 | 67.5 | $5,062.50 |

(Doc. No. 72-1, at 17–18.)

For his twelve weeks of work, Plaintiff's total net pay was $57,231.99. *Id.* Thus, the parties do not dispute that if Plaintiff had continued work for a whole year, he would have been compensated more than $107,432, and indeed that he was not compensated less than $684 per week. The relevant question therefore is not whether Plaintiff meets the minimum compensation criteria but rather whether Plaintiff was paid on a salary basis. The fact that Plaintiff's earnings were clearly computed on an hourly basis does not preclude him from having been paid a salary under the regulations. *Helix Energy*, 983 F.3d at 790.

In this respect, the regulations provide as follows:

An exempt employee's earnings may be computed on an hourly, a daily or a shift basis, without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly required amount paid on a salary basis regardless of the number of hours, days or shifts worked, and a reasonable relationship exists between the guaranteed amount and the amount actually earned.

29 C.F.R. § 541.604.

Thus, Plaintiff may still be considered to have been paid on a salary basis if Defendant can show that: (1) the employment arrangement included a guarantee of at least the minimum weekly required amount paid on a salary basis regardless of the number of hours, days or shifts worked; and (2) and a reasonable relationship exists between the guaranteed amount and the amount actually earned. *Id.*; *see also Helix Energy*, 983 F.3d at 790 ("an employer can pay a daily rate under § 541.604(b) and still satisfy the salary basis test of § 541.602—but only if the employer complies with both the minimum weekly guarantee requirement and the reasonable relationship test.").

12

As to the minimum weekly guarantee, Defendant points to the Williams proposal, which states "[e]mployees are guaranteed the opportunity to work a minimum of 4-days or 40 hours per week." (Doc. No. 74-3, at 120.) Plaintiff contends he never saw the Williams proposal or this guarantee because this document was a proposal from Rush Resources to Williams for the project Plaintiff eventually worked on. (Martin Tr. at 224:12–225:12.) In other words, it was not a document that bore directly on the employment arrangement between Plaintiff and Defendant. While the Williams proposal contains a generic hourly guarantee as to all project employees, nothing in the Williams proposal says anything about a guaranteed weekly pay generally or specifically as to Plaintiff. Rather, Defendant asks the court to extrapolate a guaranteed number of hours from that proposal and multiply it by Plaintiff's hourly rate of $75.00 to conclude that Plaintiff was paid a guaranteed salary of $3,000 per week. But the evidence does not support this inference. Absent from all direct communications to Plaintiff regarding his compensation was any kind of guarantee of minimum weekly pay. For example, Plaintiff's offer letter never stated that he was guaranteed a minimum of $3,000 per week. Rather, his offer letter stated that he would be paid weekly at a "Straight-Time Rate $75.00". (Doc. No. 72-7.) Importantly, this is consistent with how Plaintiff was *actually* paid. (Doc. No. 72-1.)

The only other evidence Defendant points to is a screenshot of its HR software that shows Plaintiff's pay rate at $75,000/hour with frequency listed as weekly and standard hours and annual amount listed as 40.00 and $156,0000, respectively. (Doc. No. 74-3, at 124.) But again, this screenshot makes no mention of guaranteed hours or pay. Even if one could infer that somehow this screenshot showed Plaintiff received annual earnings of more than $107,432, it includes no indication that he also received at least $684 per week paid on a salary basis as the regulations require. 29 C.F.R. § 541.601(b)(1); *Helix Energy*, 983 F.3d at 794 (finding that § 541.601 also

13

requires that "[t]otal annual compensation' must include at least $684 per week paid on a salary ...

basis.") (internal quotations omitted). Defendant cites to no evidence that shows Plaintiff was

guaranteed $3,000 per week regardless of the hours worked as required by the regulations. Rather,

the evidence shows that Plaintiff was paid for the number of hours worked at $75 per hour. (Doc.

No. 72-2.) Indeed, the pay stubs show that the week of April 16, 2018 to April 22, 2018, Plaintiff

only worked 30 hours and was therefore compensated only $2,250. (Doc. No. 72-1.) Had Plaintiff

been guaranteed a weekly pay of $3,000, or a predetermined amount of earnings regardless of

hours or days worked, as Defendant suggests, then he should have been paid $3,000 for that week

of work. As such, there is no legal or factual basis to conclude that Plaintiff was paid a weekly

minimum guarantee regardless of the number of hours worked.

Defendant also makes no showing on the reasonable relationship test and instead argues

that it does not apply because Plaintiff was paid a base salary of $3,000 per week. (Doc. No. 79,

at 8.) As discussed above, Defendant's argument has no basis in fact or law. Both the regulations

and the Fifth Circuit have made clear that an employee paid at an hourly rate could still satisfy the

salary basis test for exemption but only if the employer complies with both the minimum weekly

guarantee requirement *and* the reasonable relationship test. 29 C.F.R. § 541.604; *Helix Energy*,

983 F.3d at 790. Defendant attempts to distinguish *Helix* by noting that the plaintiff in that case

was paid a daily rate. But this is a distinction without a difference as the regulations clearly apply

to earnings computed on an *hourly*, a daily or a shift basis. 29 C.F.R. § 541.604(b). Indeed, this

case is nearly identical to *Helix* where the Fifth Circuit found that the employee was not exempt

from the FLSA's overtime requirements.

Like *Helix*, Defendant merely theorizes that the hourly rate it pays Plaintiff is a minimum

weekly guaranteed amount "even though it is the very opposite of an amount that is paid

14

'regardless of the number of ... days ... worked.'" *Helix Energy*, 983 F.3d at 794. Here, Plaintiff was paid at an hourly rate of $75/hour on a weekly basis for the number of hours of work performed. (Doc. No. 72-1.) Similarly like *Helix*, Defendant has not bothered to contend that it satisfies the reasonable relationship test and Plaintiff's pay was sometimes twice that of the supposed $3,000 per week guarantee. *Id.*; *Helix Energy*, 983 F.3d at 794.

For these reasons, there is no evidence to suggest that Plaintiff was paid on a salary basis and as such, no reasonable juror could conclude that Plaintiff was paid a salary under the law. Accordingly, Plaintiff is entitled to summary judgment that he was not exempt as a highly compensated employee under the law. Moreover, because each of the additional exemptions asserted also require that Plaintiff be compensated on a salary basis, those exemptions also fail as a matter of law. *See* 29 C.F.R. § 541.200; 29 C.F.R. § 541.100; 29 C.F.R. § 541.708; *Helix Energy*, 983 F.3d at 790.

## CONCLUSION

As Plaintiff has offered undisputed evidence showing that he meets the elements of his prima facie case for a violation of the FLSA and the court has concluded that Plaintiff is not exempt from FLSA overtime pay as a matter of law, summary judgment as to Plaintiff's FLSA claim is appropriate. Accordingly, Plaintiff's motion (Doc. No. 72) is **GRANTED** as to liability on his FLSA claim. Defendant's motion (Doc. No. 73) is **DENIED**. The only remaining defenses raised by the parties' motions pertain to damages. At this time, the court **DEFERS** ruling on damages. However, since the court has found that Plaintiff is entitled to summary judgment as to liability on his FLSA claim, the issue of damages should now be appropriately presented.

Accordingly, it is **ORDERED** that within 30 days of the issuance of this Order, Plaintiff shall file a brief, not to exceed 15 pages, on the issue of damages. Thereafter, within 14 days of

the receipt of Plaintiff's brief on damages, Defendant shall file a response also limited to 15 pages. Plaintiff may file a reply, not to exceed 5 pages, within 7 days of receipt of Defendant's response. The parties **SHALL** meet and confer on the issue of damages at least 7 days prior the filing of Plaintiff's initial brief. All other deadlines in this case are hereby **STAYED**.

**So ORDERED and SIGNED this 22nd day of January, 2021.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE